## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

NICOLE SANDERS, Personal Representative
of THE ESTATE OF TIMOTHY SANDERS,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

       SERVE ON:
       United States Attorney's Office
       Eastern District of Virginia
       101 W. Main Street #8000
       Norfolk, Virginia 23510

CASE NO.: 2:26cv517

       COPY VIA CERTIFIED MAIL TO:
       Todd Blanche, Esquire
       Office of the Attorney General
       United States Department of Justice
       950 Pennsylvania Avenue NW
       Washington D.C. 20530

       Department of the Navy
       Office of the Judge Advocate General
       Attn: Admiralty and Claims Division
       1322 Patterson Avenue SE, Suite 3000
       Washington Navy Yard, DC 20374-5066

Defendant.

## COMPLAINT

COMES NOW, Plaintiff, Nicole Sanders, in her capacity as the Personal Representative

of the Estate of Timothy Sanders ("Plaintiff" or "Ms. Sanders"), and for her cause of action

against Defendant, the United States of America ("Defendant"), for the death of Sonar

Technician Submarine Third Class[1] Petty Officer Timothy Sanders ("Petty Officer Sanders"), alleges and states as follows:

## I.    INTRODUCTION

1.    "*Feres* is indefensible as a matter of law, and senseless as a matter of policy. *Carter v. United States*, 145 S. Ct. 519, 521 (2025) (Thomas, J., dissenting). Ultimately, it operates only to "depriv[e] injured servicemembers and their families of a remedy for no good reason at all." *Id.*

2.    It is abundantly clear from the damning language of Defendant's own investigation that the primary hurdle to recovery in this tragic case is the oft-maligned *Feres* doctrine. Were all else the same, but the negligent parties employed by a private entity, Plaintiff would recover. Were there no difference of fact, save that the deceased individual was a civilian guest aboard the same ship, Plaintiff would recover. In sum, Defendant's legal argument will claim that Plaintiff is barred from suit "simply 'because [Petty Officer Sanders] devoted his life to serving in his country's Armed Forces.'" *Id.* at 523 (quoting *United States v. Johnson*, 481 U.S. 681, 703 (1987) (Scalia, J., dissenting)).

3.    Even to the extent that *Feres* and its progeny are found applicable to this case, now is the time, and this is the case, for that unjust doctrine to be replaced with a logical standard, one that is consistent with the laws actually passed by Congress, and which is appropriately fair to those willing to give all they have in the service of their country. When a member of the armed forces is injured or killed as a result of a negligent act, committed by an employee of the United States who is performing an inherently civilian activity—such as

---

[1] While most official paperwork still identifies Petty Officer Sanders with the rank of STS3, he obtained all necessary requirements for advancement to STS2 shortly before his death. His family continues to make efforts to ensure he is properly identified posthumously.

2

providing healthcare, supervising recreational activities, or performing routine maintenance in port—there is no statutory, practical, or justifiable reason to make that victim a second-class citizen devoid of recourse under the law. *See id.* at 523–24 (exploring the "near-universal consensus that the *Feres* doctrine is wrong on the law, incoherent in justification, and unjust in practice").

4.      In the words of Defendant's detailed investigation into the death of Petty Officer Sanders, "this tragedy was entirely preventable." And yet, the further tragedy of denying his family justice and stymying any hope for accountability remains equally preventable today.

## II.      PARTIES, JURISDICTION & VENUE

5.      Plaintiff is a citizen of the United States of America, over the age of eighteen years, and currently resides in the State of Florida. On September 17, 2024, Ms. Sanders qualified as the Personal Representative of the Estate of Timothy S. Sanders.

6.      At the time of his death, Petty Officer Sanders was stationed aboard the USS HELENA, a Los Angeles-class attack submarine. The USS HELENA was in port and moored to Pier 3 at Naval Station Norfolk.

7.      Plaintiff was the mother of Petty Officer Sanders, who is also survived by his father, William Sanders, his four sisters, his fiancée, and a wide cast of beloved extended family members.

8.      Defendant, the United States of America, is and was a federal governmental entity amenable to suit in this action pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 30901 *et seq.* and/or the Public Vessels Act, 46 U.S.C. §§ 31101 *et seq.* Accordingly, this Court has subject matter jurisdiction over this action, which involves a claim arising from damages occurring on navigable waters. *See* 28 U.S.C. § 1333(1).

3

9. This Court may exercise personal jurisdiction over Defendant.

10. Venue is proper in this District because the acts and omissions alleged herein occurred here.

### III. FACTS COMMON TO ALL COUNTS

11. On May 14, 2024, repair work commenced aboard the USS HELENA under the supervision of Fleet Maintenance Submarines ("FMB").

12. At all times relevant to this matter, FMB operated within Norfolk Naval Shipyard and as part of the Department of the Navy ("Navy"). FMB staff consists of a mixture of uniformed personnel, civilian employees, and contracted employees.

13. FMB is called upon by the Navy to perform "intermediate-level maintenance," which means the type of work that is above the assumed capability of the crew, but does not rise to the complexity of more significant repairs.

14. Part of the repair work performed onboard the USS HELENA by FMB in May 2024 required access to an electrical panel located within a small storage area known as the Capstan Space.

15. Early on May 24, 2024, two FMB workers entered the Capstan Space, removed the panel cover of an electrical box, and reconnected three electrical leads which had been previously left disconnected during ongoing repairs. After confirming that the leads were reconnected correctly, the panel cover was to be replaced. One of the FMB workers entered the Capstan Space to replace the cover, but the second worker did not attempt to verify the work.

16. Tragically, the panel cover was not properly or securely re-attached.

17. Thereafter, the FMB workers left the USS HELENA and informed their supervisor that all electrical work was complete.

18.     That same morning, the day shift supervisor at FMB Code 930 went onboard the USS HELENA to perform his required safety and quality inspections. This day shift supervisor looked into the Capstan Space; but failed to visually or physically check the electrical panel. Despite this failure, this supervisor marked on his safety checklist, using a smiley face emoticon, to indicate that he had completed "a 'hands-on' inspection:"

| 6. | Verify that ALL fasteners (where applicable) are installed, made up correctly, lubricated as specified in applicable instructions, have the correct thread engagement, thread type, fastener length, no mixed fasteners (i.e., correct/same material types), and are not loose using a "hands-on" inspection of all accessible fasteners. SUBSAFE/FBW/SOC: Perform a "hands-on" inspection of all accessible fasteners to ensure they are tight. | | ☺ |

19.     Upon leaving the USS Helena, the FMB Code 930 supervisor informed another supervisor, from FMB Code 950, that all electrical work was completed on the USS HELENA.

20.     Rather than performing his own independent safety check, the FMB Code 950 supervisor simply relayed confirmation that all electrical work was complete.

21.     Upon information and belief, all FMB personnel referenced above were civilian employees and/or contractors, not active-duty uniformed personnel.

22.     Based on the confirmations described above provided by FMB supervisors, the crew aboard the USS HELENA was informed that the electrical work was complete, meaning that preparations for the ship's departure could safely resume.

23.     That same morning, May 24, 2024, several flotation coverall suits were delivered to the USS HELENA as part of their preparations for going underway. Those coverall suits were stored, per normal protocols, within the Capstan Space.

24.     At approximately 3:20pm, the crew attempted to test the system that had purportedly been repaired by FMB. The test was unsuccessful and it was determined that the electrical system located in the Capstan Space needed to be reset.

5

25. Shortly thereafter, Petty Officer Sanders was asked to go remove the flotation coverall suits from the Capstan Space to allow for easier access. Petty Officer Sanders immediately went to perform this task.

26. Due to the prior failures of FMB's workers and supervisors, the panel that was supposed to be covering the electrical box within the Capstan Space was not in place. When Petty Officer Sanders reached inside to grab the coverall suits, his hand came into contact with the exposed electrical equipment and he was killed instantly.

27. When Petty Officer Sanders was found a few minutes later, his body was laying on top of the panel cover that was supposed to have been securely fastened by the FMB personnel.

28. An extensive investigation by the Navy found that Petty Officer Sanders' death was in no way whatsoever due to his own misconduct. Petty Officer Sanders reasonably "believed that the Capstan Space was safe when he entered" when, in fact, it "was not safe."

29. By contrast, the Navy's own investigation found that Petty Officer Sandes' death was "entirely preventable" because the cover panel was "improperly installed" and FMB supervisors "consciously chose not to" take advantage of "at least two additional opportunities to verify the proper installation."

30. As part of this investigation, "FMB employees acknowledged abnormalities in their maintenance practices" and "demonstrated an inclination to accept those abnormalities as satisfactory." The investigation revealed evidence of "a culture at FMB that values expediency and work completion over thorough, verified processes that ensure personnel safety."

6

## IV.    CAUSES OF ACTION

### COUNT 1: NEGLIGENCE UNDER THE SUITS IN ADMIRALTY ACT
**(46 U.S.C. § 30901 et seq.)**

31.    Plaintiffs repeat and re-allege each allegation of the foregoing paragraphs as if fully set forth herein.

32.    Agents and employees of FMB, acting within the course and scope of their employment with Defendant, owed a duty to exercise reasonable care in the performance of their duties aboard the USS HELENA in May 2024.

33.    Agents and employees of FMB were negligent insofar as they breached that duty in the following ways:

     a.    Failing to perform their duties in a reasonably careful manner;

     b.    Failing to properly re-install and secure the panel cover inside the Capstan Space;

     c.    Failing to confirm that the panel cover inside the Capstan Space was properly fastened and safely secured;

     d.    Failing to do the appropriate safety checks before certifying completion of the electrical work onboard the USS HELENA;

     e.    Failing to follow the requirements of the safety checklists for the work being performed;

     f.    Unreasonably providing assurances of safety to the crew of the USS HELENA when, in fact, the Capstan Space was not a safe location;

     g.    Other negligent acts and omissions that may arise during discovery and litigation in this matter.

34.    It was reasonably foreseeable that a consequence of such negligent acts and omissions would be the creation of unsafe conditions aboard the USS HELENA and that a crew member, such as Petty Officer Sanders, would come into contact with such hidden dangers.

35.    These negligent acts and omissions of FMB, imputed by law to Defendant, proximately caused the death of Petty Officer Sanders and the resulting damages to Plaintiff claimed herein.

## COUNT 2: NEGLIGENCE UNDER THE PUBLIC VESSELS ACT
### (46 U.S.C. § 31101 et seq.)

36.    Plaintiffs repeat and re-allege each allegation of the foregoing paragraphs as if fully set forth herein.

37.    Agents and employees of FMB, acting within the course and scope of their employment with Defendant, owed a duty to exercise reasonable care in the performance of their duties aboard the USS HELENA in May 2024.

38.    Agents and employees of FMB were negligent insofar as they breached that duty in the following ways:

a.    Failing to perform their duties in a reasonably careful manner;

b.    Failing to properly re-install and secure the panel cover inside the Capstan Space;

c.    Failing to confirm that the panel cover inside the Capstan Space was properly fastened and safely secured;

d.    Failing to do the appropriate safety checks before certifying completion of the electrical work onboard the USS HELENA;

e.    Failing to follow the requirements of the safety checklists for the work being performed;

f.    Unreasonably providing assurances of safety to the crew of the USS HELENA when, in fact, the Capstan Space was not a safe location;

g.    Other negligent acts and omissions that may arise during discovery and litigation in this matter.

39.     It was reasonably foreseeable that a consequence of such negligent acts and omissions would be the creation of unsafe conditions aboard the USS HELENA and that a crew member, such as Petty Officer Sanders, would come into contact with those hidden dangers.

40.     These negligent acts and omissions of FMB, imputed by law to Defendant, proximately caused the death of Petty Officer Sanders and the resulting damages to Plaintiff claimed herein.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court award damages to Plaintiff against Defendant on all Counts and grant Plaintiff, in her capacity as Personal Representative of the Estate of Timothy Sanders, the following:

    a.  Compensatory damages for the death of Petty Officer Sanders, including pain and suffering, emotional distress, loss of advice, solace, counsel, companionship, and economic damages, in the amount of $30,000,000.00, or a sum certain to be determined at trial;

    b.  Prejudgment interest, from May 24, 2024 until the date of judgment;

    c.  Post-judgment interest as calculated at the maximum rate allowable by law; and

    d.  Such other and further relief as the Court may determine to be just and equitable under the circumstances.

NICOLE SANDERS, Personal Representative
of THE ESTATE OF TIMOTHY SANDERS

_____/s/ Kevin A. Hoffman_____

| | |
|---|---|
| Randy D. Singer (VA Bar No. 26501) | S. Marshall Griffin, Jr. (VA Bar No. 87585) |
| Kevin A. Hoffman (VA Bar No. 87632) | THE GRIFFIN LAW FIRM |
| SINGER HOFFMAN, LLC | 999 Waterside Drive, Suite 2525 |
| 1209A Laskin Road | Norfolk, VA 23510 |
| Virginia Beach, VA 23451 | Telephone: (757) 434-0198 |
| Telephone: (757) 301-9995 | Email: marshall@griffinlawdefense.com |
| Facsimile: (757) 233-1084 | |
| Email: randy.singer@singerhoffman.com | |
| Email: kevin.hoffman@singerhoffman.com | |

*Counsel for Plaintiff*

9